Michelle H. Swann – 019819
SCHNEIDER & ONOFRY, P.C.
3101 N. Central Avenue, Suite 600
Phoenix, AZ  85012-2658
Telephone: (602) 200-1287
Fax: (602) 230-8985
E-mail: minute-entries@soarizonalaw.com
mswann@soarizonalaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation, | No. |
| Plaintiff, | **Verified Complaint** |
| vs. | |
| Pentagon Investment Group, LLC, a Maryland limited liability company; and Katie D. Dang, an individual, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Defendants Pentagon Investment Group, LLC, a Maryland limited liability company ("Pentagon"), and Katie D. Dang, an individual ("Dang"), alleges as follows:

### NATURE OF THE ACTION

1.       This is an action for injunctive relief, breach of contract, federal trademark infringement, and unfair competition under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.), and related common law and Arizona statutory causes of action arising from Defendants' refusal to remove a curvilinear sign cabinet as required by the Membership Application and Agreement that they signed with Best

Western International, Inc. and Defendants' refusal to cease and desist their unauthorized use of Best Western's trade name, trademarks, service marks, logos, and other intellectual property and similar identifying symbols (the "Best Western Symbols") in violation of Best Western's federal and common law trademark rights.

## THE PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Best Western is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona.

3.     Defendant Pentagon is a Maryland limited liability company with its principal place of business in Maryland and it executed the parties' Membership Application and Agreement as the owner of the hotel property at issue.

4.     Defendant Dang is an individual, believed to be a resident of Maryland, who was designated as the Voting Member for Defendants' Best Western membership.

5.     This Court has jurisdiction over the claims and venue is proper pursuant to A.R.S. § 12-401 because:  (1) there are no matters pending between the parties in any other jurisdiction; (2) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; and (3) Defendants executed a contract that contained a forum selection clause requiring all disputes arising from that contract be resolved by an Arizona state or federal court.

6.     The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, the Defendants expressly contractually

agreed to litigate all disputes with Best Western arising from or related to Best Western's Membership Application and Agreement executed by Defendant Pentagon on or about July 15, 2009, and or any relationship between the parties, in the Arizona state or federal court located in Maricopa County, Arizona.  A copy of the Membership Agreement is attached as Exhibit 1.

7.      The exercise of personal jurisdiction over Defendants by this Court is proper because Defendants have caused events to occur, and injuries to result, in the State of Arizona, and Defendants aimed their conduct at Best Western, knowing that Best Western is located in Arizona, and harming Best Western in Arizona.

## GENERAL ALLEGATIONS

8.      Best Western operates as a membership organization consisting of individually owned and operated hotels (i.e., its members).  The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Application and Agreement ("Membership Agreement") and in Best Western's Bylaws and Best Western's Rules and Regulations (the "Regulatory Documents").

9.      Best Western provides its members with a worldwide reservation system and worldwide marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services").  Best Western employs a large number of employees worldwide who are dedicated to providing member hotels with the Best Western Services.

10.     Each Best Western member is authorized to use the Best Western trade Symbols and other intellectual property (the "Best Western Symbols") in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement.  *See* Membership Agreement at ¶¶ 1, 19-26.

11.     Best Western first adopted "Best Western" as its trade name in 1947.  Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark identifying hotel services provided by member hotels affiliated with Best Western.  Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947.  As a result of this extensive promotion, the trade name and trademark have become famous among consumers as a source-identifying symbol.

12.     Since 1959, Best Western has registered with the United States Patent and Trademark Office ("USPTO") various trademarks, service marks, and collective membership marks.  On April 14, 1959, the Best Western logo was first registered as a service mark by the USPTO under Registration No. 677,103.  Best Western has developed the Best Western Symbols at great expense over the past decades.

13.     Best Western owns the following registrations for the Best Western Symbols and the marks referenced in these registrations:

(a)     a Best Western logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

(b)     a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,813, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

(c)     a Best Western logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360;

(d)     a Best Western logo was registered as a collective membership mark by the USPTO on September 27, 1977, under Registration No. 1,074,300 to Best Western, Inc. and assigned to Best Western International, Inc. in 1979, and is still active;

(e)     the Best Western word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,427,735;

(f)     the Best Western word mark was registered by the USPTO as a collective service mark on March 10, 1987, under Registration No. 1,432,431;

(g)     the Best Western crown logo design was registered by the USPTO as a service mark on December 6, 1988, under Registration No. 1,515,712;

(h)     Best Western's current logo was registered by the USPTO as a trademark on June 20, 1995, under Registration No. 1,900,620;

(i)     Best Western's current logo was registered by the USPTO as a service mark on November 7, 1995, as Registration No. 1,933,830;

(j)     Best Western's current logo was registered by the USPTO as a service mark on November 25, 1997, as Registration No. 2,116,079;

(k)      Best Western's current logo was registered by the USPTO as a service mark on October 14, 1997, as Registration No. 2,105,546;

(l)      Best Western's current logo was registered by the USPTO as a service mark on March 3, 1998, as Registration No. 2,140,332;

(m)      the Best Western globe and pillow logo design was registered by the USPTO as a service mark on December 24, 2002, as Registration No. 2,665,955;

(n)      the BEST WESTERN word mark was registered by the USPTO as a service mark on August 3, 2004, under Registration No. 2,869,617;

(o)      the BESTWESTERN.COM word mark was registered by the USPTO as a service mark on April 19, 2005, under Registration Nos. 3,107,814, 3,080,655 and 3,083,667;

(p)      BW was registered by the USPTO as a service mark on November 29, 2005, under Registration No. 3,020,526; and

(q)      Best Western has registered a variety of other designs and phrases as service marks in connection with the trade of hotel and motel lodging, many of which incorporate the words BEST WESTERN.

14.      All of the registrations described above are currently in full force and effect, unrevoked, and uncanceled.  Several of the above listed federal registrations for the Best Western word mark and logo have become incontestable under 15 U.S.C. § 1065.

15.      The Best Western Symbols are inherently distinctive and possess strong secondary meaning.

16.     In exchange for receiving the Best Western Services and the Best Western License, Best Western members are obligated to, among other things, pay yearly membership fees, dues and other assessments.

17.     Upon default by a member of certain of its obligations to Best Western, including obligations set forth in the Membership Agreement and Regulatory Documents, the Best Western Board of Directors may terminate the membership and the Best Western License.  A Best Western member may also self-terminate the Best Western membership and the Best Western License.

18.     The Membership Agreement and the Regulatory Documents establish the minimum standard scores that each member must meet in order to achieve and maintain membership.  As a result, consumers worldwide associate Best Western Symbols with high quality in the hotel/motel industry.

19.     A key element of Best Western's branding effort is the display of the Best Western Symbols on the premises of member hotels through signs, publications, and other public displays.

20.     Within 15 days following the termination of membership, the former member must cease and desist from using, and remove from public view, all Best Western Symbols and all references to Best Western.  The former member is also required to cease and desist from using any item that is similar to the Best Western Symbols in spelling, sound, appearance, or in any other matter.

21.     Upon termination of the Best Western License, the former member(s) must "actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol." *See* Membership Agreement at ¶ 22.

22.     Best Western does not authorize non-Best Western members to utilize the Best Western Symbols.

23.     Best Western's Regulatory Documents state that:

> Upon termination or cancellation of Membership, the former Best Western member *shall remove the Best Western sign . . . . When the sign cabinet is removed, it must be destroyed or modified so that the top of the cabinet has no curvilinear features . . . .* The cost of removal of Best Western identification upon termination or cancellation shall be the responsibility of the former Member.

*See* Rules and Regulations, Section 300.6, attached here as Exhibit 2 (emphasis added).

## DEFENDANTS' BEST WESTERN MEMBERSHIP

24.     On or about July 15, 2009, Defendant Pentagon executed the Membership Agreement and identified itself as the owner of the (former Best Western) Envy Hotel located at 22 E. Fayette St., Baltimore, Maryland 21202, which is referenced in Best Western's records as property T-21053 (the "Hotel").

25.     Upon Best Western's approval of the Membership Agreement, Defendant Pentagon and the designated Voting Member were jointly bound by the Membership Agreement and Regulatory Documents.

26.     On or about May 10, 2013, Defendant Dang was appointed as the Voting Member through an Application for Change in Voting Member.  A copy of the Application for Change in Voting Member is attached as Exhibit 3.

27.     By executing the Application for Change in Voting Member, Defendant Dang affirmed that she understood and agreed to the terms of the Membership Application and Agreement, to meet Best Western membership requirements, and to be personally liable for the responsibilities of the Best Western affiliation, including the Membership Agreement and the Regulatory Documents.  *Id.*

28.     Defendant Dang and Defendant Pentagon are jointly bound by the Membership Agreement and Regulatory Documents.

29.     On or about November 5, 2014, Best Western, in accordance with the provisions of the Membership Agreement and Regulatory Documents, notified Defendants that the Best Western membership was terminated effective November 5, 2014.  *See* Exhibit 4.

30.     In light of the membership termination, Defendants were required to immediately remove the curvilinear sign cabinets at the Hotel in accordance with Rules and Regulations, Section 300.6.

31.     In light of the membership termination, no later than November 20, 2014, Defendants were required to: (1) cease and desist from using, and remove from public view, all Best Western Symbols and all references to Best Western; (2) cease and desist from using any item that is similar to the Best Western Symbols in spelling, sound,

appearance, or in any other matter; and (3) "actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."

32.     On or about September 4, 2015, a guest at the Hotel contacted Best Western to express dissatisfaction with the Hotel and informed Best Western that as of August 25, 2015, Defendants were still representing the Hotel as a Best Western Member. *See* Exhibit 5.

33.     On September 4, 2015, a Best Western representative observed that Defendants had not removed or altered the curvilinear sign cabinet at the Hotel as required by the Membership Agreement and Regulatory documents, despite the obligation to remove the sign cabinet as of November 20, 2014. *See* Exhibit 6.

34.     On September 4, 2015, a Best Western representative observed Best Western's famous logo in use in guest rooms at Defendants' Hotel, in violation of the Membership Agreement. *Id.*

## COUNT I – BREACH OF CONTRACT; POST TERMINATION USE OF TRADEMARKS

35.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 34 above as though fully set forth herein.

36.     Defendants' refusal to remove the Best Western famous curvilinear sign cabinet by November 20, 2014 breached their obligations under the Membership Agreement and Regulatory Documents.

37.     Defendants' refusal to cease and desist from using, and remove from public view, all Best Western Symbols and all references to Best Western at the Hotel and to "actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol" by November 20, 2014 breached their obligations under the Membership Agreement.

38.     Pursuant to the express terms of the Membership Agreement, Defendants were obligated to remove from public view and to cease all use of the Best Western Symbols at the Hotel, including in the advertisements for the Hotel within fifteen (15) days after termination, and to cease and desist from making any representation, directly or indirectly, that the Hotel was formerly affiliated with Best Western.

39.     Defendants continued to use the Best Western Symbols more than fifteen (15) days after the License terminated.

40.     Pursuant to the express terms of the Membership Agreement, Defendants were to "actively take such steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."

41.     Despite their contract obligations, as of September 4, 2015, Defendants are still using Best Western Symbols in public view at the Hotel.

42.     Paragraph 24 of the Membership Agreement provides for liquidated damages where, as here, a former member continues to use the Best Western Symbols in connection with the hotel properties for more than fifteen (15) days following the termination of their Best Western membership and the Best Western License.   The amount of liquidated

damages is equal to fifteen percent (15%) of the mean of the hotel property's room rates per day, multiplied by the total number of rooms for every day that a former member continues to use the Best Western Symbols beyond the fifteen-day period.

43.     Beginning November 21, 2014, Defendants owe $613.13 per day for each day they are unlawfully using the Best Western Symbols at the Hotel property.

44.     The liquidated damages calculations are based on the Hotel's information regarding daily rates and total number of rooms.  Copies of the Marketing Statistics Report showing the Average Daily Rates (ADR) for the hotel property and the Best Western Account Information Computer Screen, showing the number of units for the hotel, are attached as Exhibit 7.

45.     Pursuant to the Membership Agreement, and A.R.S. §§ 12-341 and 12-341.01, Best Western is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

46.     Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct, including harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate.  Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and: (1) enjoining Defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants from using the Best Western Symbols or any colorable imitation thereof, in

connection with the promotion and advertisement without Best Western's authorization; and (2) compelling Defendants to remove the curvilinear sign cabinet and destroy the cabinet or to alter the curvilinear sign cabinet to remove the curvilinear feature at the top of the sign cabinet.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114(1))

47.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

48.    Defendants have failed to cease and desist from the use of the federally registered Best Western Symbols in connection with the Hotel.

49.    Defendants' actions complained of have at all times been without Best Western's consent, and their acts constitute infringement of the federally registered Best Western Symbols in violation of 15 U.S.C. § 1114(1).

50.    Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct.   Such injuries include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

51.    Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants, from using the Best Western Symbols or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and

services without Best Western's authorization, pursuant to 15 U.S.C. § 1116.

52.     Defendants' infringement is willful, and Best Western is entitled to recover all damages sustained as a result of the unlawful conduct, including three times Defendants' profits and Best Western's damages, as well as the costs of this suit and attorneys' fees, pursuant to 15 U.S.C. § 1117.

## COUNT III – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (U.S.C. § 1125(a))

53.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 52 above as though fully set forth herein.

54.     The unauthorized use of the Best Western Symbols is likely to cause the public to believe, erroneously, that the non-member Hotel and associated services are sponsored by, endorsed by, or associated with Best Western.

55.     Defendants' operation and competition with Best Western through infringement of the federally registered Best Western Symbols in connection with the Hotel constitutes a false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

56.     Defendants have caused Best Western to suffer immediate, irreparable, and continuous loss, including injury to its goodwill and reputation.

57.     Upon information and belief, Defendants have undertaken the acts complained of herein willfully and with the intent to cause confusion, mistake, and deception on the part of the public.

58.    If Defendants are using the Best Western Symbols unlawfully, unless restrained by this Court, they will continue to commit the foregoing acts of unfair competition.

59.    Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct.   Such injuries include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

60.    Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants, from using the Best Western Symbols or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without Best Western's authorization, pursuant to 15 U.S.C. § 1116.

61.    Defendants' acts of unfair competition are willful and entitle Best Western to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117

**COUNT IV – FEDERAL TRADEMARK DILUTION – (15 U.S.C. § 1125(c))**

62.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 61 above as though fully set forth herein.

63.    Best Western has advertised and publicized the Best Western Symbols extensively for decades throughout the United States, including the State of Arizona.  As a

result of their inherent distinctiveness and extraordinarily widespread use, the Best Western Symbols have acquired a high degree of recognition and fame for hotel services.

64.   Defendants' unauthorized, post-termination use of "Best Western" on signs at the property and the curvilinear sign cabinet shape for their logo is likely to cause dilution of the distinctive quality of the Best Western Symbols.

65.   Upon information and belief, Defendants have committed the acts complained of herein willfully and with the intent to trade on Best Western's reputation and/or to cause dilution of Best Western's famous Symbols.

66.   Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct.   Such injuries include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate. Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants, from using the Best Western Symbols or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without Best Western's authorization, pursuant to 15 U.S.C. § 1116.

67.   Defendants' acts of unfair competition are willful and entitle Best Western to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

## COUNT V – UNFAIR COMPETITION – ARIZONA LAW

68.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 67 above as though fully set forth herein.

69.     Defendants' acts complained of herein constitute unfair competition under the laws of the State of Arizona.

70.     Defendants have been unjustly enriched and have damaged Best Western's business, reputation, and goodwill.

71.     Upon information and belief, Defendants' acts complained of herein were intentional, wanton, willful, guided by an evil hand and mind, and committed in bad faith and with the intent to confuse and deceive the public.

72.     Defendants' acts complained of herein have caused Best Western irreparable harm for which there is no adequate remedy at law.

## COUNT VI – TRADEMARK DILUTION UNDER ARIZONA LAW - (A.R.S. § 44-1448.01)

73.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 72 above as though fully set forth herein.

74.     The Best Western Symbols are famous within the State of Arizona, and became famous in Arizona long before Defendants began using the marks.

75.     Defendants' acts complained of herein constitute commercial use of a mark or trade name that is likely to cause dilution of the distinctive quality of the famous Best Western Symbols.

76.     Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation or to cause dilution of the Best Western Symbols.

77.     Defendants' acts complained of herein caused, or are likely to cause, dilution to the famous Best Western Symbols in violation of A.R.S. § 44-1448.01.

78.     Defendants' acts complained of herein have caused irreparable harm and injury to Best Western's famous Best Western Symbols, business reputation, and goodwill for which there is no adequate remedy at law.

## COUNT VII – TRADEMARK INFRINGEMENT UNDER ARIZONA LAW - (A.R.S. § 44-1451)

79.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 78 above as though fully set forth herein.

80.     The Best Western Symbols are famous within the State of Arizona, and became famous in Arizona long before Defendants began using the marks.

81.     Defendants' acts complained of herein constitute commercial use of a mark or trade name and trademark infringement based on Arizona registered Trademark No. 51370 in violation of A.R.S. § 44-1451.

82.     Upon information and belief, Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

83.     Defendants' acts complained of herein have caused irreparable harm and injury to Best Western's famous Best Western Symbols, business reputation, and goodwill for which there is no adequate remedy at law.

## COUNT VIII – COMMON LAW TRADEMARK INFRINGEMENT

84.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

85.    Best Western has common law rights in the Best Western Symbols through the use of the marks in commerce, such rights existing long before any use of the marks by Defendants.

86.    Defendants' acts complained of herein constitute common law infringement of the Best Western Symbols.

87.    Upon information and belief, Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

88.    Defendants' acts complained of herein have caused irreparable harm and injury to Best Western's famous Best Western Symbols, business reputation, and goodwill for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A.    Liquidated damages for breach of the Best Western Agreement in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per day multiplied by the total number of rooms beginning November 21, 2014 until Defendants cease and desist from the unlawful and unauthorized use of the Best Western Symbols; and beginning

November 21, 2014, Defendants owe $613.13 per day for each day the Best Western Symbols are unlawfully used.

B.     Permanent and preliminary injunctive relief ordering Defendants to cause the removal of all Best Western Symbols from advertisements and/or signage relating to the Hotel, and reimbursement of costs incurred by Best Western to cause the removal of the same should Defendants fail to do so (in addition to whatever penalties the Court may impose upon Defendants for failing to comply with the Court's order to remove any infringing signs, displays, or items from the Hotel) within ten (10) days of the injunction.

C.     Injunctive relief ordering Defendants to remove the curvilinear sign cabinet and destroy the cabinet or to alter the curvilinear sign cabinet to remove the curvilinear feature at the top of the sign cabinet and reimbursement of costs incurred by Best Western to cause the removal of the same should Defendants fail to do so (in addition to whatever penalties the Court may impose upon Defendants for failing to comply with the Court's order to remove any infringing signs, displays, or items from the Hotel) within ten (10) days of the injunction.

D.     Attorneys' fees and costs incurred herein against Defendants pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01.

E.     An award to Best Western of its damages in an amount to be proven at trial.

F.     As allowed by law, an award of special exemplary and/or punitive damages in an amount to be determined at trial.

G.    For such other and further relief as the Court deems just and proper in the circumstances.

Dated this 13th day, October, 2015.

SCHNEIDER & ONOFRY, P.C.


By s/Michelle Swann
Michelle H. Swann
3101 N. Central Avenue, Suite 600
Phoenix, Arizona  85012-2658
Attorneys for Plaintiff

1

## **VERIFICATION**

STATE OF ARIZONA                    )
                                                     ) ss.
COUNTY OF MARICOPA           )

I, Cheryl Pollack, state as follows:

I am the Director of Member Care Administration of Best Western International, Inc. ("Best Western"). I am authorized by Best Western to execute this Verification. I am over the age of 18 and a resident of Maricopa County, Arizona. I have read the foregoing Verified Complaint and know its contents. The information contained in the foregoing Verified Complaint is true and correct to the best of my knowledge and belief.

_Cheryl Pollack_
Cheryl Pollack

The foregoing instrument was acknowledged before me this _8th_ day of _October_, 2015, by Cheryl Pollack.

_Emily S Stahmer_
Notary Public

My Commission Expires: _April 20, 2018_

EMILY S. STAHMER
Notary Public - Arizona
Maricopa County
My Comm. Expires Apr 20, 2018